# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP1750 |
| COMPLETE TITLE: | Ronald J. Dakter and Kathleen M. Dakter, |
| |       Plaintiffs-Respondents-Cross-Appellants, |
| |          v. |
| | Dale L. Cavallino, Hillsboro Transportation Company, LLC |
| | and Michigan Millers Mutual Insurance Company, |
| |       Defendants-Appellants-Cross-Respondents-Petitioners. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 358 Wis. 2d 434, 856 N.W.2d 523)
(Ct. App. 2014 – Published)
PDC No: 2014 WI App 112

| | |
|---|---|
| OPINION FILED: | July 7, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 22, 2015 |
| | |
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Juneau |
|   JUDGE: | John P. Roemer Jr. |
| | |
| JUSTICES: | |
|   CONCURRED: | ROGGENSACK, C. J. concurs (Opinion filed). |
| | ZIEGLER, joined by GABLEMAN, JJ. concur (Opinion filed). |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the defendants-appellants-cross-respondents-petitioners, there were briefs by *Paul D. Curtis*, *Timothy M. Barber* and *Axley Brynelson, LLP*, Madison. Oral argument by *Paul D. Curtis*.


For the plaintiffs-respondents-cross-appellants, there was a brief by *John R. Orton and Curran, Hollenbeck & Orton, S.C.*, Mauston. Oral argument by *John R. Orton*.

An amicus curiae brief was filed by *William C. Gleisner, III* and *Pitman, Kalkhoff, Sicula & Dentice*, Milwaukee and *Lynn R. Laufenberg*, and *Laufenberg, Jassack & Laufenberg*, Milwaukee, on behalf of The Wisconsin Association for Justice.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2013AP1750
(L.C. No.  2009CV147)

STATE OF WISCONSIN                    :            IN SUPREME COURT

Ronald J. Dakter and Kathleen M. Dakter,

     **Plaintiffs-Respondents-Cross-Appellants,**

    v.

Dale L. Cavallino, Hillsboro Transportation Company, LLC, and Michigan Millers Mutual Insurance Company,

    **Defendants-Appellants-Cross-Respondents-Petitioners.**

**FILED**

**JUL 7, 2015**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1   SHIRLEY S. ABRAHAMSON, J.   This is a review of a published decision of the court of appeals affirming a judgment and order of the Circuit Court for Juneau County, John P. Roemer, Judge.[1]

---

[1] Dakter v. Cavallino, 2014 WI App 112, 358 Wis. 2d 434, 856 N.W.2d 523.

¶2    This case arises from the collision of a passenger automobile driven by Ronald J. Dakter, the plaintiff,[2] and a 65-foot semi-trailer truck operated by Dale Cavallino, the defendant.[3]    After a 10-day trial, the jury found the defendant 65 percent causally negligent and the plaintiff 35 percent causally negligent and assessed damages at $1,097,955.86 for the plaintiff and $63,366 for the plaintiff's wife.

¶3    The defendant raises only one question of law for our consideration:    Was the truck driver negligence instruction given to the jury on the standard of care applicable to the defendant as the operator of a semi-trailer truck erroneous, such that the defendant is entitled to a new trial?

¶4    The truck driver negligence instruction that is the subject of the defendant's challenge provided in relevant part as follows:

---

[2] For ease of reference, we refer to Ronald J. Dakter as the plaintiff.  Kathleen M. Dakter, the plaintiff's wife, is also a complainant in the instant case and was awarded damages for her injuries.  Ms. Dakter is governed by the court's ruling in the instant case.

[3] For ease of reference, we refer to Dale Cavallino as the defendant.    Hillsboro Transportation Company, LLC (the defendant's employer) and Michigan Millers Mutual Insurance Company (the employer's insurance provider) are also defendants. They are governed by the court's ruling in the instant case.

The parties, the circuit court, and the court of appeals refer to the truck operated by the defendant in various ways—as a semi, a semi truck, a semi-tractor trailer, and a semi-trailer truck.  We refer to it as a semi-trailer truck throughout this opinion.

2

At the time of the accident, the defendant, Dale Cavallino was a professional truck driver operating a semi tractor-trailer pursuant to a commercial driver's license issued by the State of Wisconsin. As the operator of a semi tractor-trailer, it was [the defendant's] duty to use the degree of care, skill, and judgment which a reasonable semi truck driver would exercise in the same or similar circumstances having due regard for the state of learning, education, experience, and knowledge possessed by semi truck drivers holding commercial driver's licenses. A semi truck driver who fails to conform to the standard is negligent. The burden is on the plaintiff to prove that [the defendant] was negligent.

¶5 The defendant asserts that the truck driver negligence instruction was erroneous because it directed the jury to consider the defendant's special knowledge and skill as a semi-trailer truck driver when determining whether the defendant was negligent. According to the defendant, an instruction regarding an actor's special knowledge and skill should not be given in "mine-run" motor vehicle negligence cases like the instant case; it should be given only in professional negligence cases. The defendant contends that by giving an instruction regarding the defendant's special knowledge and skill, the circuit court imposed a heightened standard of care on him. This, says the defendant, was prejudicial error entitling him to a new trial.

¶6 In contrast, the plaintiff contends that the truck driver negligence instruction directed the jury to take the special knowledge and skill possessed by professional semi-trailer truck drivers into account only in order to determine whether the defendant met the standard of ordinary care. In the plaintiff's view, the truck driver negligence instruction did

not impose a heightened standard of care on the defendant and was not erroneous.

¶7 The circuit court sided with the plaintiff, entering a judgment on the verdict in favor of the plaintiff and denying the defendant's post-verdict motions.

¶8 The court of appeals affirmed the judgment and order of the circuit court. The court of appeals explained that it did not consider the challenged jury instruction a misstatement of the law:

> [I]n evaluating whether an actor has acted as a reasonable person would, jurors may consider the actor's superior knowledge or skills when the knowledge or skills give the actor an ability to avoid injury or damage to others. If someone "has skills or knowledge that exceed those possessed by most others, these skills or knowledge are circumstances to be taken into account in determining whether the actor has behaved as a reasonable careful person."[4]

¶9 The court of appeals further explained that although the truck driver negligence instruction was not incorrect, a jury could possibly have misinterpreted the instruction as imposing a higher standard of care on semi-trailer truck drivers than that applied to other drivers:

> [W]e see at least some danger that the truck driver instruction could have been interpreted by the jury to suggest that [the defendant] should be held to a different, higher standard of care than other drivers because he is a professional truck driver. . . . If understood this way, it would state the legal doctrine incorrectly.[5]

---

[4] Dakter, 358 Wis. 2d 434, ¶39 (quoted source omitted).

[5] Id., ¶44.

4

¶10 The court of appeals ultimately concluded that it was "at least as likely as not that jurors aiming to apply the [truck driver negligence] instruction would have hit the mark by focusing on evidence of [the defendant's] superior knowledge and skills, and not missed the mark by holding him to a separate, higher truck driver standard of care."[6]

¶11 Nevertheless, the court of appeals opted to assume, without deciding, that the truck driver negligence instruction was erroneous. It then denied the defendant relief, concluding that any error in the challenged jury instruction was not prejudicial.

¶12 We conclude that the circuit court did not err in giving the truck driver negligence instruction. The truck driver negligence instruction did not misstate the law and was not misleading. The defendant's arguments to the contrary are not persuasive, and the defendant is not entitled to a new trial. Accordingly, although our reasoning differs, we affirm the decision of the court of appeals.

I

¶13 Many details about the collision that spawned the instant litigation remain in dispute. The following description of the collision focuses on the uncontested facts.

¶14 The collision took place on May 29, 2008, at the intersection of State Trunk Highway 80 (running north/south) and

_____

[6] Id., ¶47.

State Trunk Highway 82 (running east/west). This intersection is located in Elroy, Juneau County, Wisconsin.

¶15 The plaintiff was driving a passenger automobile northbound on Highway 80. He intended to turn left onto Tilmar Street, which is the portion of Highway 82 running west of Highway 80. He approached the intersection with his turn signal on and stopped.

¶16 Wyman Hoiland, who is not a party to this lawsuit, was driving a van southbound on Highway 80 and intended to turn left onto Highway 82. Hoiland approached the intersection with his turn signal on and stopped. His vehicle was opposite the plaintiff's vehicle in the intersection and was in front of the defendant's semi-trailer truck.

¶17 The defendant, who had a commercial driver's license issued by the State of Wisconsin and had driven a semi-trailer truck for 31 years, was driving a 65-foot semi-trailer truck southbound on Highway 80. The defendant intended to continue straight on Highway 80.

¶18 As the defendant approached the intersection, Hoiland may have turned left, permitting the defendant to remain in his lane and continue straight. Alternatively, Hoiland may have remained in the intersection waiting to turn left, leading the defendant to switch into the right-hand lane in order to drive around Hoiland and continue straight.

¶19 In any event, it is undisputed that the plaintiff attempted to execute a left turn onto Tilmar Street and collided

with the defendant's semi-trailer truck. The plaintiff sustained serious injuries.

¶20 The plaintiff filed suit against the defendant, asserting that the defendant's negligence caused the collision.

¶21 Before trial, the parties agreed that the usual standard of ordinary care applies to semi-trailer truck drivers. They disagreed, however, about whether the jury should hear expert testimony regarding the special knowledge and skill possessed by semi-trailer truck drivers.

¶22 The circuit court agreed with the position of both parties that the standard of ordinary care applies to semi-trailer truck drivers, stating as follows: "I don't believe there is a heightened standard of care. I believe all of us are required to maintain our speed, maintain our management, control of our vehicles, and also to maintain a proper look-out."

¶23 The circuit court went on to explain that with regard to semi-trailer truck drivers, ordinary care means the care "a reasonable and prudent truck driver would use under the same or similar circumstances." Accordingly, the circuit court ruled that expert testimony regarding the knowledge and skill possessed by semi-trailer truck drivers was admissible.

¶24 Three expert witnesses testified regarding the safety standards and practices that govern semi-trailer truck drivers.

¶25 The plaintiff called Charles Collins, a retired truck driving safety instructor for a driver training program at a technical college, as an expert witness. Collins explained, among other things, that the defendant was driving his semi-

trailer truck with an empty trailer and that "[i]t takes longer to stop with an empty trailer." Collins also explained that the pavement was wet and that "[w]hen the pavement is wet, it is accepted in all literature, textbooks, [and] videos that you must reduce your speed by a third," which the defendant did not do.

¶26 The plaintiff also called Andrew Sievers, a safety consultant, as an expert witness. Sievers testified about defensive driving techniques for semi-trailer truck drivers, including the "cushion of safety" (that is, the distance) that semi-trailer truck drivers should maintain between the front of their trucks and the back of the vehicles in front of them. Sievers opined that the defendant had not been maintaining a proper cushion of safety when the collision occurred. Sievers also explained that an intersection is "the location where a truck driver has the most likelihood to be involved in an accident, and because of that . . . the truck driver should be extra cautious and should reduce their speed . . . ." Sievers testified that in his opinion, the defendant was driving at an unsafe speed considering that he was entering an intersection in rainy weather.

¶27 The defendant called William Emerick, a safety consultant, as an expert witness. Emerick discussed the importance of maintaining hazard awareness and using common sense when operating a semi-trailer truck. Emerick also asserted that driving as slowly as official safety standards require can be dangerous, even when approaching an intersection

8

in rainy weather, because it can cause "traffic backup" and is "something people wouldn't expect."   Emerick testified that in his view, when the accident occurred, the defendant was driving his truck in conformity with normal safe driving practices and industry standards for drivers of commercial motor vehicles.

¶28  When the circuit court took up the issue of jury instructions near the close of trial, the parties revisited the subject of the special knowledge and skill possessed by semi-trailer truck drivers.   After lengthy argument, the circuit court gave the truck driver negligence instruction, an instruction specific to the defendant as the operator of a semi-trailer truck.

¶29  The jury returned a verdict in favor of the plaintiff. The defendant filed post-verdict motions seeking a new trial. The circuit court denied the defendant's post-verdict motions and entered a judgment on the verdict in favor of the plaintiff. The court of appeals affirmed.

II

¶30  Because the defendant challenges a jury instruction, we first recite the standard of review applicable to a challenge to jury instructions.

¶31  A circuit court has broad discretion in crafting jury instructions based on the facts and circumstances of the case.[7] A circuit court is required, however, to exercise its discretion

---

[7] State v. Neumann, 2013 WI 58, ¶89, 348 Wis. 2d 455, 832 N.W.2d 455.

"to fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence."[8]

¶32 We review jury instructions as a whole to determine whether "the overall meaning communicated by the instructions was a correct statement of the law . . . ."[9] Whether the circuit court erred by stating the law incorrectly or in a misleading manner constitutes a question of law this court decides independently of, but benefiting from, the analyses of the circuit court and court of appeals.[10]

¶33 Even if the truck driver negligence instruction was in error, the defendant is not necessarily entitled to a new trial. Erroneous jury instructions warrant reversal and a new trial only when the error is prejudicial.[11] Whether an error is prejudicial is a question of law this court decides independently of, but benefiting from, the analyses of the circuit court and court of appeals.[12]

III

---

[8] Neumann, 348 Wis. 2d 455, ¶89 (internal quotation marks omitted).

[9] Fischer by Fischer v. Ganju, 168 Wis. 2d 834, 850, 485 N.W.2d 10, 16 (1992).

[10] Neumann, 348 Wis. 2d 455, ¶89.

[11] Fischer, 168 Wis. 2d at 849-50.

[12] Weborg v. Jenny, 2012 WI 67, ¶43, 341 Wis. 2d 668, 816 N.W.2d 191.

¶34 Our analysis of the truck driver negligence instruction has three parts.

¶35 First, we set forth the negligence principles that govern the instant dispute, namely the superior knowledge rule, which requires an actor with special knowledge or skill to act commensurate with that knowledge or skill, and the profession or trade principle, which requires an actor engaged in a profession or trade to act as a reasonable member of such profession or trade would act under the same or similar circumstances.

¶36 Second, we determine that these two negligence principles apply to the defendant and thus that the truck driver negligence instruction did not misstate the law.

¶37 Third, we determine that in the context of the jury instructions as a whole, the truck driver negligence instruction was not misleading.

¶38 Because the truck driver negligence instruction was neither incorrect nor misleading, we conclude that the circuit court did not err. We therefore need not and do not address the issue of prejudice.

A

¶39 We begin with well-settled principles of negligence.

¶40 Negligence is the failure to exercise ordinary care under the circumstances, that is, the failure to exercise "that

11

degree of care which under the same or similar circumstances the great mass of mankind would ordinarily exercise."[13]

¶41 The standard of ordinary care is an objective standard; it is the care that would be exercised by a reasonable actor under the circumstances.

¶42 The circumstances that demarcate the bounds of ordinary care in a particular case include any relevant special knowledge or skill the actor brings to bear.[14] This principle is sometimes called the "superior knowledge rule."[15]

¶43 Restatement (Second) of Torts § 289, at 41 (1965) sets forth the superior knowledge rule as follows: "The actor is required to recognize that his conduct involves a risk of causing an invasion of another's interest if a reasonable man would do so while exercising . . . (b) such superior attention, perception, memory, knowledge, intelligence, and judgment as the actor himself has."[16]

---

[13] Osborne v. Montgomery, 203 Wis. 223, 231, 234 N.W. 372 (1931).

[14] Id. at 231.

[15] See, e.g., 1 Dan B. Dobbs et al., The Law of Torts § 132, at 417 (2nd ed. 2011).

[16] Comment m. to Restatement (Second) of Torts § 289 (1965) explains:

> m. Superior qualities of actor. The standard of the reasonable man requires only a minimum of attention, perception, memory, knowledge, intelligence, and judgment in order to recognize the existence of the risk. If the actor has in fact more than the minimum of these qualities, he is required to exercise the
> (continued)

¶44 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 12, at 141 (2010) describes the superior knowledge rule as follows: "If an actor has skills or knowledge that exceed those possessed by most others, these skills or knowledge are circumstances to be taken into account in determining whether the actor has behaved as a reasonably careful person."[17]

¶45 In the seminal Wisconsin case of <u>Osborne v. Montgomery</u>, 203 Wis. 223, 234 N.W. 372 (1931), this court made clear that the superior knowledge rule applies in Wisconsin.

¶46 The <u>Osborne</u> court first defined negligence as conduct that foreseeably creates an unreasonable risk of harm to the interests of another, stating:

> Every person is negligent when, without intending to do any wrong, he does such an act or omits to take such a precaution that under the circumstances present he, as an ordinarily prudent person, ought reasonably to foresee that he will thereby expose the interests of another to an unreasonable risk of harm.[18]

¶47 The <u>Osborne</u> court then declared: "If the actor in a particular case in fact has superior perception or possesses

---

> superior qualities that he has in a manner reasonable under the circumstances. The standard becomes, in other words, that of a reasonable man with such superior attributes.

[17] According to the Reporter's Note to Restatement (Third) of Torts, § 12 derives in part from Restatement (Second) of Torts § 289(b), comment m, set forth at note 16, <u>supra</u>.

[18] <u>Osborne</u>, 203 Wis. at 242.

superior knowledge, he is required to exercise his superior powers in determining whether or not his conduct involves an unreasonable risk of injury to the interests of another . . . ."[19] Thus, pursuant to the superior knowledge rule adopted in Osborne, an actor with special knowledge or skill meets the standard of ordinary care by employing that special knowledge or skill.

¶48 Various tort texts provide similar explanations of the superior knowledge rule. See, for example, the following:

- "The superior knowledge rule can be explained by saying that the actor's superior knowledge is one of the 'circumstances' that a reasonable person would take into account or by saying that a reasonable person will use all the knowledge he actually has in dealing with a recognizable risk. . . . . So it is right to tell a jury that a reasonable person will use the relevant special knowledge he has, but not right to tell the jury that he is held to a higher standard of care." 1 Dan B. Dobbs et al., The Law of Torts § 132, at 417 (2nd ed. 2011) (footnotes omitted).

- "[I]f a person in fact has knowledge, skill, or even intelligence superior to that of the ordinary person, the law will demand of that person conduct consistent with it. Experienced milk haulers, hockey coaches,

---

[19] Osborne, 203 Wis. at 243.

14

expert skiers, construction inspectors, and doctors must all use care which is reasonable in light of their superior learning and experience, and any special skills, knowledge or training they may personally have over what is normally possessed by persons in the field." W. Page Keeton et al., Prosser and Keaton on Torts § 32, at 185 (5th ed. 2000) (footnotes omitted).

- "In addition to the knowledge that may be imputed to a reasonable person, a person's actual knowledge and skills may be taken into account when the level of the person's knowledge or skills exceeds the average." 1 J.D. Lee & Barry A. Lindahl, Modern Tort Law: Liability & Litigation § 3:21 (2d ed. 1990).

¶49 These texts neither bind this court nor declare the law of Wisconsin. They do, however, support the superior knowledge rule adopted in Osborne.

¶50 The parties' briefs and the court of appeals opinion spend much time discussing the superior knowledge rule and debating whether it applies to the defendant. A close examination of the briefs and the court of appeals opinion, however, reveals that the parties and the court of appeals have at times conflated the superior knowledge rule with a related negligence principle that applies to individuals engaged in a profession or trade. We turn to that principle now.

¶51 Ordinarily, actors engaged in a profession or trade must exercise the knowledge and skill that a reasonable member

15

of that profession or trade would exercise under the same or similar circumstances.[20] In Kerkman v. Hintz, 142 Wis. 2d 404, 419-20, 418 N.W.2d 795 (1988), for example, this court stated that "a chiropractor must exercise the degree of care, diligence, judgment, and skill which is exercised by a reasonable chiropractor under like or similar circumstances."[21]

¶52 Various Wisconsin pattern jury instructions regarding the standard of ordinary care applicable to those in particular professions and trades illustrate the principle that a person engaged in a profession or trade must act commensurate with the knowledge and skill a reasonable member of that profession or trade possesses.

¶53 For example, the Wisconsin pattern jury instruction titled "Negligence: Building Contractor" defines the ordinary care standard applied to building contractors as the degree of care exercised by a reasonably prudent and skilled contractor engaged in a similar construction project. Thus, a jury must consider the knowledge and skill possessed by building

---

[20] Restatement (Second) of Torts § 299A explains the role an actor's engaging in a profession or trade plays in determining whether the actor was negligent as follows: "Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities."

[21] See also Zastrow v. Journal Commc'ns, Inc., 2005 WI App 178, ¶25, 286 Wis. 2d 416, 703 N.W.2d 673 ("In the professional negligence case, the duty is . . . based on what a reasonable professional would do in the same or similar circumstances.").

16

contractors to determine whether a particular contractor's conduct met the standard of ordinary care.

¶54 The pattern jury instruction applicable to building contractors provides in full as follows:

> A building contractor has a duty to exercise ordinary care in the construction or remodeling of a building. This duty requires such contractor to perform work with the same degree of care and skill and to provide such suitable materials as are used and provided by contractors of reasonable prudence, skill, and judgment in similar construction.[22]

¶55 Likewise, the pattern jury instruction titled "Negligence of Insurance Agent" defines the ordinary care standard applied to insurance agents by reference to the care, skill, and judgment usually employed by agents licensed to sell insurance in Wisconsin. Accordingly, a jury must consider the knowledge and skill possessed by licensed insurance agents to determine whether a particular agent's conduct met the standard of ordinary care.

¶56 This pattern jury instruction reads in relevant part as follows: "An insurance agent, such as (defendant), must use the degree of care, skill, and judgment which is usually exercised under the same or similar circumstances by insurance agents licensed to sell insurance in Wisconsin."[23]

¶57 These are just two of several examples of Wisconsin's adoption of the profession or trade principle. The profession

---

[22] Wis JI——Civil 1022.4.

[23] Wis JI——Civil 1023.6.

17

or trade principle is similarly reflected in pattern jury instructions regarding the standard of ordinary care applicable to teachers,[24] chiropractors,[25] doctors,[26] nurses and licensed technicians,[27] dentists,[28] and lawyers.[29]

---

[24] Wis JI——Civil 1381 (providing in relevant part that a teacher must "maintain that degree of supervision which an ordinarily prudent (chemistry teacher, physical education teacher, manual arts teacher) would maintain under the same or similar circumstances").

[25] Wis JI——Civil 1023.8 (stating that a chiropractor is "required to use the degree of care, skill, and judgment which reasonable chiropractors would exercise in [] like or similar circumstances, having due regard for the state of chiropractic knowledge at the time (plaintiff) was treated").

[26] Wis JI——Civil 1023 (explaining that a doctor is required to use the degree of care, skill, and judgment which a reasonable doctor in the same medical sub-field would exercise "in the same or similar circumstances, having due regard for the state of medical science at the time (plaintiff) was (treated) (diagnosed)").

[27] Wis JI——Civil 1023.7 (stating that registered nurses and licensed technicians have the duty "to use the degree of care, skill, and judgment which reasonable (registered nurses) (licensed technicians) would exercise in the same or similar circumstances, having due regard for the state of learning, education, experience, and knowledge possessed by (registered nurses) (licensed technicians) at the time in question").

Plaintiff's counsel told the circuit court that he modeled his proposed truck driver negligence instruction after the instruction applicable to nurses and licensed technicians.

[28] Wis JI——Civil 1023.14 (providing that a dentist must exercise "the degree of care, skill, and judgment" that a reasonable dentist would exercise "in the same or similar circumstances, having due regard for the state of dental science at the time (plaintiff) was (treated) (diagnosed)").

¶58 The profession or trade principle and the superior knowledge rule are closely related.  Both recognize that a reasonable actor will use any relevant special knowledge or skill the actor possesses, including the knowledge and skill the person possesses on account of his or her occupation.[30]

¶59 The two doctrines also work in combination in certain cases:  An actor engaged in a profession or trade who has knowledge or skill superior to that of a reasonable person within that profession or trade must employ such knowledge or skill in order to meet the standard of ordinary care.

¶60 Dobbs' text on torts explains the overlapping relationship between these two negligence doctrines as follows:

> Superior or specialized knowledge or skill.  A reasonable person will act in the light of (a) knowledge shared by the community generally and also (b) information, knowledge and skill that he himself has that is not generally known and that reasonable people would not ordinarily have. . . .

---

[29] Wis JI——Civil 1023.5 (stating that "it is a lawyer's duty to use the degree of care, skill, and judgment which reasonably prudent lawyers practicing in this state would exercise under like or similar circumstances").

[30] The Reporter's Note to Restatement (Third) of Torts § 12, at 144, illustrates the connection between the profession or trade principle and the superior knowledge rule by explaining that the superior knowledge rule "can easily be applied to cases involving the liability of professionals.  Those professionals routinely represent themselves as having special knowledge and skills . . . ."  (Citation omitted.)

See also Restatement (Second) of Torts § 299A, cmt. a., at 73 (1965), stating:  "All professions, and most trades, are necessarily skilled . . . ."

The superior knowledge rule has obvious application to professionals like physicians and surgeons, who are held to possess the skills and knowledge of others in good standing in their profession. <u>A physician who knows more than a layman must use that additional knowledge in the practice of medicine.</u> But the point reaches even further. <u>A physician who knows more than other physicians is also expected to use that special knowledge.</u> . . . The principle applies equally to any kind of skill or experience.

<u>Reasonable person standard and superior knowledge</u>. The superior knowledge rule can be explained by saying that the actor's superior knowledge is one of the "circumstances" that a reasonable person would take into account or by saying that a reasonable person will use all the knowledge he actually has in dealing with a recognizable risk. <u>Either way, the standard of care, that of the reasonable person under the same or similar circumstances, remains the same.</u> So it is right to tell a jury that a reasonable person will use the relevant special knowledge he has, but not right to tell the jury that he is held to a higher standard of care.[31]

¶61 Importantly, although both the superior knowledge rule and the profession or trade principle describe the circumstances the jury is to consider in determining negligence, neither doctrine sets forth a heightened standard of care.[32]

¶62 In sum:

---

[31] 1 Dobbs et al., <u>supra</u> note 15, § 132, at 416-17 (footnotes omitted, emphasis added).

[32] Restatement (Third) of Torts § 12, comment a. at 142, explains: "It can be noted that even though the actor's extra skills can properly be considered, these skills do not establish for the actor a standard of care that is higher than reasonable care; rather, they provide a mere circumstance for the jury to consider in determining whether the actor has complied with the general standard of reasonable care."

- Under the superior knowledge rule, a person with special knowledge or skill is required to exercise the care a reasonable person with such special knowledge or skill would exercise under the same or similar circumstances.

- Under the profession or trade principle, a person engaged in a profession or trade is required to exercise the care a reasonable member of the profession or trade would exercise under the same or similar circumstances.

- Regardless of whether the jury applies the superior knowledge rule, the profession or trade principle, both doctrines, or neither doctrine, the standard of care remains that of ordinary care.

¶63 With these negligence principles in mind, we turn to the truck driver negligence instruction, which is the subject of the defendant's challenge in the present case.

B

¶64 We now explore whether the superior knowledge rule and the profession or trade principle apply to the defendant in the instant case. We conclude that they do and thus that the truck driver negligence instruction did not misstate the law.

¶65 The truck driver negligence instruction required the jury to consider the defendant's special knowledge or skill as a "professional" semi-trailer truck driver, thereby incorporating both the superior knowledge rule and the profession or trade principle. The instruction provided as follows:

21

At the time of the accident, the defendant, Dale Cavallino, was a professional truck driver operating a semi tractor-trailer pursuant to a commercial driver's license issued by the State of Wisconsin.  As the operator of a semi tractor-trailer, it was [the defendant's] duty to use the degree of care, skill, and judgment which a reasonable semi truck driver would exercise in the same or similar circumstances having due regard for the state of learning, education, experience, and knowledge possessed by semi truck drivers holding a commercial driver's license. A semi truck driver who fails to conform to the standard is negligent. The burden is on the plaintiff to prove that [the defendant] was negligent.

¶66 The defendant asserts, however, that neither the superior knowledge rule nor the profession or trade principle applies to him.

¶67 The defendant concedes that an individual must undergo specific training and testing to obtain a commercial driver's license and operate a semi-trailer truck.  Nevertheless, the defendant contends that the jury cannot take into account the special knowledge or skill required to operate a semi-trailer truck.  According to the defendant, "all users of the roadway have the same duty of ordinary care regardless of their driving experience or skills."  In the defendant's view, permitting a jury to "consider a driver's individual skill, experience, and training would result in an unworkable subjective standard of care with 'ceaseless variations.'"[33]

---

[33] The defendant places heavy reliance on Saxby v. Cadigen, 266 Wis. 391, 63 N.W.2d 820 (1954), and on several cases from other jurisdictions, for the proposition that it is error to instruct a jury to consider the knowledge, skill, or experience of particular drivers in a motor vehicle negligence case.

(continued)

¶68 The defendant further contends that the profession or trade principle applies only in professional malpractice cases, that is, in situations in which the actor is providing a highly specialized professional service to the plaintiff that involves a unique standard of care.  The defendant points out that he was not providing a service to the plaintiff and that semi-trailer truck driving is not the kind of highly specialized occupation normally classified as a profession.

¶69 We disagree with the defendant and conclude that both the superior knowledge rule and the profession or trade principle apply to the defendant.  We review them in turn.

¶70 Insofar as the defendant argues that the superior knowledge rule does not apply to semi-trailer truck drivers, he is plainly incorrect.  The skill and knowledge required to drive a semi-trailer truck are not part of the "ordinary equipment" of a reasonable person.[34]  Rather, they are the result of acquired learning and experience.

---

None of the cases the defendant cites are on all fours with the instant case.  Some do not involve trucks.  Others were decided before the adoption of the special rules, regulations, and standards that now govern the licensure of semi-trailer truck drivers and the operation of semi-trailer trucks.  See, e.g., Fredericks v. Castora, 360 A.2d 696 (Pa. Super. 1976).  In short, the cases cited by the defendant do not address whether it was error to give a jury instruction setting forth a standard of care particular to the defendant as a professional truck driver operating a semi-trailer truck pursuant to a commercial driver's license.

[34] See Restatement (Second) of Torts § 299A, cmt. a (1965).

23

¶71 The defendant was required to, and did, undergo specialized testing and obtain a specialized license to demonstrate that he possesses the special knowledge and skill necessary to safely operate a semi-trailer truck.   The defendant's assertion that this special knowledge and skill could not be considered by the jury is not cogent.

¶72 The statutes and regulations applicable to semi-trailer trucks and semi-trailer truck drivers bolster our conclusion that the superior knowledge rule applies to the defendant.

¶73 Semi-trailer trucks are commercial motor vehicles. Under Wis. Stat. § 343.05(2) (2007-08),[35] a person can operate a commercial motor vehicle only if certain conditions are met. Among other requirements, the person must carry a commercial driver's license that is not revoked, suspended, canceled, or expired.[36]

¶74 Federal regulations likewise dictate that those operating commercial motor vehicles must generally carry a commercial driver's license.[37]   Federal regulations also specify the knowledge and skills drivers must possess in order to obtain

---

[35] All subsequent references to the Wisconsin Statutes are to the 2007-08 version unless otherwise indicated.

[36] See Wis. Stat. § 343.05(2).   An exception is set forth at Wis. Stat. § 343.055, titled "Commercial Driver License Waivers."

[37] See, e.g., 49 C.F.R. § 383.23(a).

such licensure.  Three provisions are particularly relevant in the instant case.

¶75  First, 49 C.F.R. § 383.110 provides that to ensure safety, commercial motor vehicle drivers are required to have the baseline level of knowledge and skills set forth in subsequent provisions.  It states in full as follows:

> All drivers of [commercial motor vehicles] must have the knowledge and skills necessary to operate a [commercial motor vehicle] safely as contained in this subpart.  The specific types of items that a State must include in the knowledge and skills tests that it administers to [commercial driver's license] applicants are included in this subpart.

¶76  Second, 49 C.F.R. § 383.111 sets forth and explains 20 areas in which commercial motor vehicle operators are required to have specified knowledge to obtain a commercial driver's license.  These areas include safe operations regulations, speed management, extreme driving conditions, hazard perceptions, and emergency maneuvers.[38]

¶77  Third, 49 C.F.R. § 383.113 enumerates the skills a commercial motor vehicle operator must possess to obtain a commercial driver's license.  These skills include identifying safety-related vehicle parts, like the engine compartment and brakes;[39] inspecting and operating air brakes;[40] and safely

---

[38] See 49 C.F.R. § 383.111(a).

[39] See 49 C.F.R. § 383.113(a)(1).

[40] See 49 C.F.R. § 383.113(a)(2).

driving the vehicle by, for example, maintaining "a safe following distance depending on the condition of the road."[41]

¶78 These state statutes and federal regulations demonstrate that the conduct of a semi-trailer truck driver should be assessed by reference to the conduct of a reasonable person with the special competence required of semi-trailer truck drivers——not by reference to the conduct of a reasonable, ordinary driver.

¶79 We turn to the profession or trade principle, which was incorporated into the truck driver negligence instruction.

¶80 The Wisconsin pattern jury instructions discussed previously demonstrate that the profession or trade principle applies not merely to highly specialized professionals, as the defendant asserts, but more broadly to those engaged in occupations that require the exercise of "acquired learning, and aptitude developed by special training and experience."[42]

¶81 Restatement (Second) of Torts § 299A is also helpful in determining what constitutes a profession or trade. A comment to § 299A references a wide range of occupations (including plumbers, carpenters, and blacksmiths) to which the profession or trade principle generally applies. This comment reinforces our conclusion that the profession or trade principle has broader applicability than the defendant lets on. It

---

[41] See 49 C.F.R. § 383.113(c)(6).

[42] Restatement (Second) of Torts § 299A, cmt. a (1965).

26

governs an actor in the performance of his or her occupation so long as reasonably performing that occupation requires acquired learning and aptitude developed by special training and experience.[43]

¶82 Clearly, driving a semi-trailer truck constitutes a profession or trade within the context of the profession or trade principle.  It was therefore appropriate for the jury to evaluate the defendant's conduct by reference to the conduct of a reasonable semi-trailer truck driver.

¶83  For the reasons set forth, we conclude that the truck driver negligence instruction did not misstate the law.

¶84  A circuit court can err in instructing the jury not only by misstating the law but also by stating the law in a manner likely to mislead the jury.  Accordingly, we now turn to the possibility (discussed by the court of appeals) that the jury misinterpreted the truck driver negligence instruction.

C

---

[43] See Restatement (Second) of Torts § 299A, Comment b, at 73 (1965):

> This Section . . . applies to any person who undertakes to render services to another in the practice of a profession, such as that of physician or surgeon, dentist, pharmacist, oculist, attorney, accountant, or engineer.  It applies also to any person who undertakes to render services to others in the practice of a skilled trade, such as that of airplane pilot, precision machinist, electrician, carpenter, blacksmith, or plumber.

¶85 The defendant's basic contention is that even if the truck driver negligence instruction did not technically misstate the law, it likely misled the jury and was therefore prejudicial error.

¶86 The defendant argues that the truck driver negligence instruction "had the practical effect of telling the jury that [the defendant] had a higher standard of care because he held a [commercial driver's license]."[44] The defendant points out that within the same negligence instruction, the circuit court set forth the standard of ordinary care applicable to the plaintiff. The implication, says the defendant, was that the jury should apply a heightened standard of care to the defendant.

¶87 We disagree with the defendant. The truck driver negligence instruction was not a stand-alone instruction. It was part of lengthy set of negligence instructions given by the circuit court. We do not evaluate the truck driver negligence instruction in isolation. We review the jury instructions as a whole to determine whether they fully and fairly convey the applicable rules of law to the jury.[45]

---

[44] One commentator has acknowledged that it is difficult to instruct a jury in a way that maintains the distinction between considering an actor's special knowledge and skill as a relevant circumstance and holding the actor to a heightened standard of care. Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 12, Reporter's Note to cmt. a., at 145 (2010). Nevertheless, a jury can take an actor's special knowledge or skill into account without transforming the standard of care being applied.

[45] Weborg, 341 Wis. 2d 668, ¶74 ("Jury instructions are evaluated in their entirety, not in isolation.").

¶88 Relevant here are several paragraphs of the negligence instructions in which the circuit court (1) introduced the special verdict questions pertaining to negligence; (2) introduced the concepts of negligence and of ordinary care; (3) provided specific instruction regarding the standard of care applicable to the defendant as a semi-trailer truck driver; and (4) elaborated upon the standard of ordinary care, with particular attention to highway driving.[46]

¶89 These paragraphs of the negligence instructions provided as follows:

> Question number 1 and question number 3 of the verdict asked whether or not [the defendant] and [the plaintiff] were or were not negligent. These questions read as follows, question number 1, was [the defendant] negligent in the operation of his vehicle immediately before or during the accident, yes or no. Question number 3, was [the plaintiff] negligent in the operation of his automobile immediately before or during the accident, yes or no. I will now instruct you of the definition of negligence and the various rules and safety statutes you must apply to determine whether or not either [the defendant] or [the plaintiff] or both were negligent in this case.
>
> A person is negligent when they fail to exercise ordinary care. Ordinary care is the care which a reasonable person would use in similar circumstances. A person not using ordinary care is negligent, if the person without intending to do harm does something or fails to do something that a reasonable person would recognize as creating an unreasonable risk of injury

---

[46] These are the first four paragraphs of a ten-paragraph set of negligence instructions. The following five paragraphs cover particular facets of the standard of ordinary care as it applies to individuals driving on a highway. The tenth and final paragraph explains the concept of comparative negligence.

or damage to a person or property.  At the time of the accident, [the defendant] was a professional truck driver operating a semi tractor-trailer pursuant to a commercial driver's license issued by the State of Wisconsin.  As the operator of a semi tractor-trailer, it was [the defendant's] duty to use the degree of care, skill, and judgment which a reasonable semi truck driver would exercise in the same or similar circumstances having due regard for the state of learning, education, experience, and knowledge possessed by semi truck drivers holding commercial driver's licenses.  A semi truck driver who fails to conform to the standard is negligent.  The burden is on the plaintiff to prove that [the defendant] was negligent.

Every person in all situations has a duty to exercise ordinary care for his or her own safety.  This does not mean that a person is required at all hazards to avoid injury.   A person must, however, exercise ordinary care to take precautions to avoid injury to himself or herself.  A person must exercise ordinary care to employ his sense of sight and hearing so as to become aware of the existence of danger to him or her. A failure to do so is negligence.  It is the duty of every person to exercise ordinary care, and to recognize and appreciate all dangers that are open and obvious to him, or which [would] have been recognized and appreciated by a reasonable, prudent person under the same or similar circumstances.  That the warning of the existence of danger was not seen or was not heard does not free one from negligence.  In addition, one who looks and fails to see or listens and fails to hear a warning of danger, which under like or similar circumstances would have been seen or would have been heard by a reasonable, prudent person is as guilty of negligence as one who did not look or listen at all. However, a person is not bound to see every hazard or danger in his or her pathway even though they should be plainly observable or to remember the existence of every condition of which a person has had knowledge. A person is only required to act as a reasonable, prudent person would act under the same or similar circumstances.

To be free of negligence, a person must exercise ordinary care in choosing his or her course of conduct

in the pursuit of that choice. A person is not guilty of negligence in making the choice of conduct if the person has no knowledge that one course of conduct carries a greater hazard than another provided that such lack of knowledge is not the result of a person's failure to exercise ordinary care. Every user of the highway has the right to assume that every other user of the highway will obey the rules of the road. However, a person cannot continue to make that assumption if the person becomes aware or in the exercise of ordinary care, ought to be aware that another user of the highway by his or her conduct is creating a dangerous situation. Under such circumstances, a person using the highway must use ordinary care to avoid the danger. A driver must use ordinary care to keep a careful look out ahead and about him or her for the presence of vehicles, movement, objects or pedestrians, or may be within approaching the driver's course of travel. In addition, the driver has to use ordinary care to look out to the condition of the highway ahead, for traffic signs, markers, obstructions to vision, and other things that might warn of possible danger. The failure to use ordinary care to keep a careful look out is negligence.

¶90 The defendant's contention that the truck driver negligence instruction likely misled the jury is untenable in light of the numerous statements, made throughout the portion of the negligence instructions set forth above, that the standard of ordinary care applies to all drivers.

¶91 Particularly relevant here are the portions of the jury instructions immediately preceding and immediately following the truck driver negligence instruction.

¶92 Right before giving the truck driver negligence instruction, the circuit court instructed the jury that negligence is the failure to exercise ordinary care. The circuit court did not limit this statement to the plaintiff in

31

any way; it stated the standard of ordinary care in general terms, as applied to everyone.

¶93 The circuit court's exact words, taken from the pattern jury instruction on negligence, were as follows:

A person is negligent when they fail to exercise ordinary care.  Ordinary care is the care which a reasonable person would use in similar circumstances. A person not using ordinary care is negligent, if the person without intending to do harm does something or fails to do something that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.

¶94 Right after giving the truck driver negligence instruction, the circuit court reiterated the standard of ordinary care and then elaborated upon the concept of negligence in the context of highway driving.

¶95 The circuit court stated as follows:

It is the duty of every person to exercise ordinary care, and to recognize and appreciate all dangers that are open and obvious to him, or which [would] have been recognized and appreciated by a reasonable, prudent person under the same or similar circumstances. . . .

        . . . .

Every user of the highway has the right to assume that every other user of the highway will obey the rules of the road.  However, a person cannot continue to make that assumption if the person becomes aware or in the exercise of ordinary care, ought to be aware that another user of the highway by his or her conduct is creating a dangerous situation.  Under such circumstances, a person using the highway must use ordinary care to avoid the danger.

(Emphasis added.)

32

¶96 Read as a whole, the message conveyed by the jury instructions was clear: The standard of ordinary care applies to both the plaintiff and the defendant. Ordinary care is the care a reasonable person would exercise under the circumstances. In the instant case, the circumstances relevant to a determination of whether the defendant acted reasonably include the fact that at the time of the collision, the defendant was engaged in a profession or trade (semi-trailer truck driving) and possessed the special knowledge and skill required of semi-trailer truck drivers.

¶97 Could the truck driver negligence instruction have been more clearly worded? Perhaps. But perfection is not what the law requires. An appellate court need decide only whether "the overall meaning communicated by the instruction . . . was a correct statement of the law[] . . . ."[47] In the instant case, the overall meaning communicated by the totality of the negligence instructions was a correct statement of the law and was not misleading.

¶98 In sum, we conclude that the circuit court did not err in giving the truck driver negligence instruction. The truck driver negligence instruction did not misstate the law and was not misleading. The defendant's arguments to the contrary are

---

[47] White v. Leeder, 149 Wis. 2d 948, 954-55, 440 N.W.2d 557 (1989). See also Nommensen v. Am. Cont'l Ins. Co., 2001 WI 112, ¶50, 246 Wis. 2d 132, 629 N.W.2d 301.

not persuasive, and the defendant is not entitled to a new trial.

*By the Court.*—The decision of the court of appeals is affirmed.

¶99 PATIENCE DRAKE ROGGENSACK, C.J. *(concurring).* The central issue presented is whether the circuit court erred by giving the jury a special skills instruction because Dale L. Cavallino held a commercial license to operate the semi-truck at the time of the accident.[1] I conclude that the circuit court's special skills instruction was erroneous because it incorrectly stated the law. However, I also conclude that the error was harmless. Accordingly, I would affirm the court of appeals, and although I do not join the majority opinion, I respectfully concur.

## I. BACKGROUND

¶100 The majority opinion fully sets out the facts that underlie the dispute before us. Therefore, I will not repeat them.

## II. DISCUSSION

### A. Standard of Review

¶101 Challenges to jury instructions present questions of law for our independent review. State v. Beamon, 2013 WI 47, ¶18, 347 Wis. 2d 559, 830 N.W.2d 681. Whether an erroneously given instruction is harmless error also presents a question of law that we review independently. State v. Nelson, 2014 WI 70, ¶18, 355 Wis. 2d 722, 849 N.W.2d 317.

---

[1] Majority op., ¶3.

B.   Jury Instructions

¶102 The defendant, Cavallino,[2] argues that the special skills instruction was erroneous because it directed the jury to consider Cavallino's superior knowledge and skill as a licensed semi-truck driver.   According to Cavallino, the circuit court erred because the court gave an instruction regarding superior knowledge and skill similar to that employed in professional negligence cases, rather than the standard negligence instruction that is customarily given in vehicular negligence cases.   Cavallino argues that the circuit court's instruction imposed a heightened standard of care on him, and that doing so was prejudicial error entitling him to a new trial.

¶103 The plaintiff, Ronald J. Dakter,[3] contends that the instruction directed the jury to take superior knowledge and skill of professional semi-truck drivers into account so that the jury could determine whether Cavallino met the standard of ordinary care under the circumstances.

1.   General principles for instructions

¶104 "The purpose of a jury instruction is to fully and fairly inform the jury of a rule or principle of law applicable to a particular case." Nommensen v. Am. Cont'l Ins. Co., 2001 WI 112, ¶36, 246 Wis. 2d 132, 629 N.W.2d 301.   Jury instructions

---

[2] Cavallino's employer, Hillsboro Transportation Company, LLC, and Michigan Millers Mutual Insurance Company, Hillsboro's insurance provider, are also defendants.   Their positions are consistent with Cavallino's.

[3] Kathleen M. Dakter, Ronald's wife, is also a plaintiff.

"<u>explain</u> what the law means to persons who usually do not possess law degrees." <u>Id.</u> (internal quotation marks and citation omitted).

¶105 "A circuit court has broad discretion when instructing a jury." <u>Id.</u>, ¶50 (citing <u>White v. Leeder</u>, 149 Wis. 2d 948, 954, 440 N.W.2d 557 (1989)). A circuit court appropriately exercises its discretion when the instruction correctly states the law and comports with the facts of the case. <u>Weborg v. Jenny</u>, 2012 WI 67, ¶42, 341 Wis. 2d 668, 816 N.W.2d 191; <u>White</u>, 149 Wis. 2d at 954-55. However, even if the circuit court erroneously exercises its discretion, an "erroneous jury instruction warrants reversal and a new trial only if the error was prejudicial." <u>Kochanski v. Speedway SuperAmerica, LLC</u>, 2014 WI 72, ¶11, 356 Wis. 2d 1, 850 N.W.2d 160 (quoting <u>Fischer v. Ganju</u>, 168 Wis. 2d 834, 849, 485 N.W.2d 10 (1992)). "An error is prejudicial when it probably misled the jury." <u>Id.</u> In other words, a jury instruction error "is not prejudicial if it appears that the result would not be different had the error not occurred." <u>Id.</u> (quoting <u>Lutz v. Shelby Mut. Ins. Co.</u>, 70 Wis. 2d 743, 751, 235 N.W.2d 426 (1975)).

## 2. Special skills instruction

¶106 There are professions and trades for which special skills are necessary to performance of the profession or trade. <u>See</u> <u>Racine Cnty. v. Oracular Milwaukee, Inc.</u>, 2009 WI App 58, ¶28, 317 Wis. 2d 790, 767 N.W.2d 280 (parsing whether computer software installers were subject to a higher professional standard of care based on special skills). When those special

3

skills are required but not competently performed, the "[p]rofessionals may be sued for malpractice because [of] the higher standards for care imposed on them by their profession." Id. (internal quotation marks and citation omitted). Further, when a higher standard of care is imposed on members of a profession or trade, expert witness testimony generally is required to prove that those standards were not met. Id., ¶34.

### 3. Instructions given

¶107 The circuit court gave a special skills instruction based on Cavallino being licensed as a semi-truck driver. That instruction stated in pertinent part:[4]

> At the time of the accident, the defendant, Dale Cavallino, was a professional truck driver, operating a semi tractor trailer pursuant to a Commercial Driver's License issued by the State of Wisconsin. As the operator of a semi tractor-trailer, it was Dale Cavallino's duty to use the degree of care, skill and judgment which reasonable semi truck drivers would exercise in the same or similar circumstances, having due regard for the state of learning, education, experience, and knowledge possessed by semi truck drivers holding Commercial Driver's Licenses. A semi truck driver who fails to conform to this standard is negligent.

¶108 Immediately prior to the semi-truck driver instruction, the jury received instruction on the standard of ordinary care:[5]

> A person is negligent when he fails to exercise ordinary care. Ordinary care is the care which a reasonable person would use in similar circumstances.

---

[4] Labelled "New #3 Negligence: Semi Truck Driver."

[5] Labelled "1005 Negligence: Defined."

4

A person is not using ordinary care and is negligent, if the person, without intending to do harm, does something or fails to do something that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.

¶109 In regard to these two instructions, the court of appeals melded them together and explained how it concluded that Cavallino's superior knowledge and skill fit into the standard of ordinary care:

> Putting together the general standard of care with its application to the circumstances in which an actor possesses pertinent superior knowledge or skills: (1) all have a duty to use ordinary care to avoid acts that a reasonable person would recognize create unreasonable risks of injury or damage to others or property, and (2) a "reasonable person will act in the light of (a) knowledge shared by the community generally and also (b) information, knowledge and skill that he himself has that is not generally known and that reasonable people would not ordinarily have." Dan B. Dobbs et al., The Law of Torts § 132 (2d ed. 2014).

Dakter v. Cavallino, 2014 WI App 112, ¶40, 358 Wis. 2d 434, 856 N.W.2d 523.

¶110 The parties agree that it would have been improper for the circuit court to have instructed the jury that Cavallino is held to a higher standard of care than other drivers on the highway because he was a professional semi-truck driver.[6] Dakter acknowledges that the standard of care for all drivers is ordinary care.

¶111 However, the wording of the special skills instruction for semi-truck drivers implies that there is a semi-truck driver

---

[6] Respondent's Brief at 22: "We agree; the standard is always 'ordinary care.'"

5

standard of care and that Cavallino was obligated to conform his conduct to that standard of care, which differs from ordinary care. That implication permitted the jury to hold Cavallino to a different standard of care than the standard of care that the jury applied to Dakter.

¶112 Specifically, the instruction directed that it was Cavallino's "duty to use the degree of care, skill and judgment which reasonable semi truck drivers would exercise in the same or similar circumstances." This is an incorrect statement of the law. It establishes a semi-truck driver standard of care that required Cavallino to use skills in addition to those required of Dakter while both were using a public highway. Accordingly, the circuit court erred by giving the jury the special skills instruction that was focused on the skills required of a commercial driver of a semi-truck.

¶113 I also conclude that the circuit court erroneously exercised its discretion in giving the special skills instruction because the application of the superior knowledge and skills doctrine is limited to persons taking actions in a venue where special skills are required by that venue. For example, when one takes action in a venue where special skills are required, e.g., physicians, lawyers, pharmacists and dentists, the circumstances that underlie the standard of ordinary care take into account the similarity of experience among those who work in the exclusive venue where the particularized superior knowledge and skills are required. Stated otherwise, in cases where special skills are relevant,

6

the duty is defined by standards applicable to the particular profession of the alleged tortfeasor. Zastrow v. Journal Commc'ns, Inc., 2005 WI App 178, ¶25, 286 Wis. 2d 416, 703 N.W.2d 673.

¶114 In contrast to those who work in exclusive venues that require special skills in order to work in that venue, professional and lay vehicle operators employ the same venue, i.e., they share the same roadways. In addition, a driver with a license permitting him or her to drive a semi-truck[7] could also drive a large truck, a pickup truck or a car. A driver with a commercial license could be a professional semi-truck driver, or he or she may drive a semi-truck only rarely. Alternatively, a driver holding a class D (regular) driver's license[8] may operate any number of large and cumbersome vehicles, including large moving trucks or trucks with large trailers. Because all of these vehicle operators act in the same venue, i.e., the shared roadway, they are subject to the same ordinary care. Ordinary care is that care exercised by a reasonable person under the circumstances. See Hoida, Inc. v. M&I Midstate Bank, 2006 WI 69, ¶¶30-32, 291 Wis. 2d 283, 717 N.W.2d 17. The circumstances of ordinary care are not modified according to the type of vehicle operator, but rather, uniformly reflect the nature of the shared venue, a public roadway. See State Dep't of Transp. v. Robbins, 246 P.3d 864, 867 (Wyo. 2011) (citing Cervelli v.

---

[7] Wis. Stat. § 343.03(3)(b).

[8] Wis. Stat. § 343.03(3)(a).

*Graves*, 661 P.2d 1032, 1038-39 (Wyo. 1983) (affirming the trial court's refusal to give a jury instruction that set an individualized standard of care for a semi-truck driver and reasoning that to do so would be to convert an ordinary negligence case into a semi-truck driver's malpractice action)).

¶115 Even though I conclude that the circuit court erred in giving the semi-truck driver negligence instruction, the instruction was not prejudicial and therefore was harmless. As the court of appeals noted, the erroneous instructions may have subjected Cavallino to a higher standard of care than that to which he would have been held if he lacked superior knowledge or skills. *Dakter*, 358 Wis. 2d 434, ¶47. However, I also agree that jurors likely focused on the evidence presented at trial. *Id.* Therefore, if jurors were presented with accurate statements of the standard of ordinary care, they would have been as likely to reach the same conclusion.

¶116 Furthermore, "[j]ury instructions are evaluated in their entirety, not in isolation." *Weborg*, 341 Wis. 2d 668, ¶74. The erroneous semi-truck driver instruction was surrounded by correct instructions that repeatedly reminded the jury of the standard of ordinary care.

¶117 In addition, the jury's apportionment of negligence is substantially supported by the facts and does not indicate prejudice. Trial testimony supports the jury's verdict. For example, under hypothetical facts matching Dakter's testimony regarding the accident that gives rise to this case, Cavallino's own expert stated that if the hypothetical facts were true, the

driving was "reckless" and Cavallino's own employer stated that such driving would be "unsafe." These facts in combination with the multiple instructions on ordinary care cause me to conclude that there is no reasonable probability that the circuit court's error in giving the semi-truck driver instruction contributed to the outcome of the trial. Accordingly, the jury instruction error was not prejudicial because the jury's verdict likely would have been the same had the error in instructions not occurred. See Kochanski, 356 Wis. 2d 1, ¶11.

### III. CONCLUSION

¶118 I conclude that the circuit court's special skills instruction was erroneous because it incorrectly stated the law. However, I also conclude that the error was harmless. Accordingly, I would affirm the court of appeals, and although I do not join the majority opinion, I respectfully concur.

¶119 ANNETTE KINGSLAND ZIEGLER, J. *(concurring)*. I join the majority opinion's conclusion that the semi-truck driver jury instruction at issue was not erroneous under the facts of this case. I also join Chief Justice Roggensack's conclusion that, if this jury instruction were erroneous, the error was harmless. I write separately to clarify two points.

¶120 First, I write to clarify that the semi-truck driver jury instruction at issue was proper because the defendant was driving a semi-truck at the time of the accident. See majority op., ¶96 ("In the instant case, the circumstances relevant to a determination of whether the defendant acted reasonably include the fact that at the time of the collision, the defendant was engaged in a profession or trade (semi-trailer truck driving) and possessed the special knowledge and skill required of semi-trailer truck drivers." (emphasis added)). Had the defendant been driving a passenger automobile rather than a semi-truck at the time of the accident, the semi-truck driver jury instruction would have been erroneous, notwithstanding the fact that the defendant is a professional semi-truck driver.

¶121 Second, I write to clarify that certain treatises that the majority opinion cites are overly broad and do not dictate the law in Wisconsin. See, e.g., majority op., ¶48 ("[I]f a person in fact has knowledge, skill, or even intelligence superior to that of the ordinary person, the law will demand of that person conduct consistent with it." (quoting W. Page Keeton et al., Prosser and Keaton on Torts § 32, at 185 (5th ed. 2000))); id. ("In addition to the knowledge that may be imputed

1

to a reasonable person, a person's actual knowledge and skills may be taken into account when the level of the person's knowledge or skills exceeds the average." (quoting 1 J.D. Lee & Barry A. Lindahl, Modern Tort Law: Liability & Litigation § 3:21 (2d ed. 1990))); id., ¶43 n.16 ("The standard of the reasonable man requires only a minimum of attention, perception, memory, knowledge, intelligence, and judgment in order to recognize the existence of the risk. If the actor has in fact more than the minimum of these qualities he is required to exercise the superior qualities that he has in a manner reasonable under the circumstances." (quoting Restatement (Second) of Torts § 289 cmt. m. (1965))). These passages should not be improperly construed as an expansion of Wisconsin law. See majority op., ¶49 ("These texts neither bind this court nor declare the law of Wisconsin."). Instead, I write to clarify that the majority opinion cites these treatises for the sole and limited purpose that, under the facts of this case, the semi-truck driver jury instruction was proper because the defendant was driving a semi-truck at the time of the accident. The majority opinion expressly recognizes that these broad treatise passages do not "declare the law of Wisconsin." Majority op., ¶49.

¶122 For the foregoing reasons, I respectfully concur.

¶123 I am authorized to state that Justice MICHAEL J. GABLEMAN joins this concurrence.